**Samuel S. OTIS, Plaintiff,**

v.

**NATIONAL TEA COMPANY, Defendant.**

**No. 51 C 906.**

United States District Court
N. D. Illinois, E. D.

June 23, 1954.

Judgment Affirmed Jan. 6, 1955.

See 218 F.2d 153.

Edwin Phelps, Wilmette, Ill., for plaintiff.

Harry C. Alberts, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff seeks damages and injunctive relief for an alleged infringement of Claims 4 and 6 of Patent No. 2,459,391. The patent was issued to plaintiff on January 18, 1949, and relates to a "knife rack and edger," which is similar to the wooden racks commonly used by butchers to store their tools. The primary element of plaintiff's rack is a horizontal metal shelf, containing a number of slots, into which the butcher's knives are inserted. As the title of the patent indicates, plaintiff claims that his device serves two distinct purposes: first, as a rack, and second, as an "edger" or "steeler". According to plaintiff, the edging is accomplished by the metal edges of each slot, which are supposed to exert an abrasive effect upon the knife blade as it is inserted or withdrawn from the slot. Plaintiff's claim is that his rack, unlike all others, will maintain the butcher's knives in a relatively sharp condition.

It should first be made clear that wooden knife racks were patented long before the issuance of the plaintiff's patent, and that each of the earlier racks is structurally similar to plaintiff's rack. See, for example, Smith, No. 1,357,123 (1920); Bleckley, No. 1,614,342 (1927); Van Meter, No. 1,748,259 (1930); Fried, No. 1,876,284 (1932); Michelson, No. 2,122,069 (1938); and Lowell, No. 2,-453,800 (1948). A review of these patents demonstrates that plaintiff's rack is different in but one respect: it is made of metal, rather than wood.

The evidence adduced at the trial shows that plaintiff's choice of metal as a material for his rack was dictated primarily by hygienic, rather than functional considerations. When asked on direct examination to state the facts

which led to the development of his rack, the plaintiff testified (T., 58):

"It started out almost as a matter of civil improvement or philanthropy, if you please.

"I was in the local butcher shop in Winnetka doing my household shopping when I noticed the local health officer taking to task the butcher for being unsanitary and having a wooden knife rack. He told the butcher he wanted him to get a cleaner rack, or preferably one of metal.

"The butcher was somewhat flabbergasted. He said, 'Where do I get one? Never heard of such a thing.'

"The doctor admitted he had not either and so to relieve the stymied situation, I stepped in and said, 'All right, Doc, I will build you one.'"

The patent itself describes the hygienic benefits of the metal rack before it lists any use of the rack as an "edger". It is there stated: "It is important, for obvious reasons, that the block and the rack, as well as the knives and other cutting tools used, be kept at all times in a clean and sanitary condition." If any additional support for this point is needed, it may be found in Plaintiff's Exhibit 18, which is a mimeographed sheet containing directions for assembling plaintiff's rack. Attached to the sheet is an advertisement entitled "20 reasons why the Otis knife rack is the best on the market." Reason number one states: "The Otis knife rack, model 2, is neat and good looking. It is all made of bright polished metal on all exposed sides. Its clean, efficient, sanitary appearance makes a good impression on customers." Reason number 2 states that the rack is designed to please "health officers and sanitarians." Of the "20 reasons", but one, number 9, mentions the alleged "edging" quality of the metal rack.

However, even if it is assumed that plaintiff's patented rack was designed for use as an edger, the court must find, on the basis of all the evidence adduced at the trial, that the rack has little if any edging effect. Indeed, the evidence demonstrates that wooden racks will maintain knives in a sharper condition than most metal racks, particularly racks made of aluminum or other soft metals, as is plaintiff's rack. (T., 129, 185 and 194.)

Since plaintiff's rack was fully anticipated by earlier inventors, the patent is invalid for lack of invention; and since plaintiff's rack does not perform the function described in his claims, the patent is invalid for lack of utility.

The facts described and the conclusions expressed herein shall stand as Findings of Fact and Conclusions of Law, as provided in Federal Rule 52(a), 28 U.S.C.A.

For the reasons stated, judgment is hereby entered for defendant, and the complaint is dismissed at plaintiff's costs.